# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA S. GOSS-KOZIC,** *individually and as Administratrix of the Estate of Gerard J. Kozic, Deceased*, | : : : | **CIVIL ACTION NO. 3:15-1479** |
| **Plaintiff,** | : : | **(JUDGE MANNION)** |
| **v.** | : : | |
| **ROSS TOWNSHIP,** *et al.* | : : | |
| **Defendants.** | : : | |

## MEMORANDUM

Pending before the court is a motion for leave of court to file an amended complaint, (Doc. 47), filed by the plaintiff, Linda S. Goss-Kozic, individually and as Administratrix of the Estate of Gerard G. Kozic, Deceased. Also before the court are the respective motions to dismiss the original complaint filed by the defendants, who include: Ross Township (Doc. 22); Ross Township Supervisors, Howard Beers ("Supervisor Beers"), Russell Kresge, Jr. ("Supervisor Kresge"), and Tina Drake ("Supervisor Drake") (collectively, the "Ross Township Supervisors") (Doc. 22); Ross Township Solicitor John Dunn ("Solicitor Dunn") (Doc. 29); and Sheriff of Monroe County, Todd Martin ("Sheriff Martin") (Doc. 19). The plaintiff filed suit against each of the individual defendants in both their individual and their official capacity. For the reasons stated below, the court will **DENY** the plaintiff's

motion for leave of court to file an amended complaint, and the court will **GRANT** the defendants' motions to dismiss with prejudice.

## I.   FACTUAL BACKGROUND

This case undoubtedly involves tragic events that occurred in Ross Township on August 5, 2013, resulting in a grievous loss by the Kozic family. On that day, Rockne Newell ("Newell") opened fire during the monthly meeting of the Ross Township Supervisors, resulting in the death and serious injury of several attendees. James LaGuardia, David Fleetwood, and the plaintiff's decedent, Gerard Kozic, were shot and killed. The plaintiff was also severely wounded. Newell's property had been condemned and sold by the township ten days prior to the shooting due to zoning and sewage violations. The plaintiff alleges that, over a period of approximately 20 years, Ross Township engaged in a substantial and multifaceted campaign against Newell, culminating in the mass shooting. The plaintiff also claims that the defendants failed to provide security at the meeting despite their alleged knowledge of Newell's propensity for violence.

On July 30, 2015, the plaintiff originally filed this action pursuant to 42 U.S.C. §1983, claiming that Gerard Kozic and she were deprived of their due process rights under the Fourteenth Amendment of the Constitution. (Doc. 1). The plaintiff's first cause of action is for wrongful death pursuant to 42

Pa.C.S.A §8301. The second cause of action is a survival action pursuant to

20 Pa.C.S.A. §3373 and 42 Pa. C.S.A. §8302. The third cause of action is for

personal injury to the plaintiff. Specifically, the plaintiff avers that she suffered

"numerous, severe, permanent, irreparable and disabling injuries," including

but not limited to:

> a gunshot wound to the left lower leg, grade 3C open tibia fracture
> requiring an open reduction and internal fixation, nerve damage,
> muscle loss, low back pain, and an injury to the left distal popliteal
> artery requiring numerous surgeries, skin grafts, transplants, and
> reconstruction, emotional upset, severe shock to her nervous
> system and numerous other injuries.

(Doc. 47-3 at ¶75). The plaintiff now seeks to amend the complaint, which

alleges the same causes of action but contains additional factual allegations

contained in paragraphs 28, 29, 30, 31, and 34. The following is taken from

the pleadings and accompanying exhibits, as well as matters of the public

record.

In 1990, Newell purchased 1.3 acres in real property located at 293

Flyte Road in Ross Township. Ross Township is a township in Monroe County

governed by a three-member Board of Supervisors. Defendant Supervisor

Kresge owns real property located at 206 Flyte Road, which directly abuts the

rear and lies directly across the street from Newell's property. All three

Supervisors at the time of the shooting are named as defendants in the case;

however, when Newell purchased the subject property in 1990, Kresge was

not yet a Supervisor.

The plaintiff alleges that the defendants used their positions for personal gain and benefit. (Doc. 47-3, ¶17). Specifically, the plaintiff describes Kresge's desire to purchase Newell's property, as demonstrated by antagonistic statements Kresge made to Newell and Kresge's multiple attempts to purchase the land for $500.00. For example, Kresge was quoted in a 2002 Pocono Record article as stating, "I don't want him around. No one else can have a place like that and neither can he." (Doc. 47-3, ¶21). As a result of Kresge's personal motives, the defendants pursued legal action against Newell, practicing selective enforcement of zoning regulations.

On February 6, 2012, at the Supervisors' monthly township meeting, the Ross Township Supervisors authorized legal action against Newell for violation of zoning regulations and sewer codes. On February 21, 2012, Ross Township filed a complaint in the Court of Common Pleas of Monroe County. On August 6, 2012 the Court of Common Pleas issued an opinion finding that Newell constructed a dwelling and resided on the premises, without first obtaining a zoning permit or a certificate of occupancy. Other violations included "storing junk, debris, municipal recyclables and municipal waste on his property," and storing open buckets of fecal matter inside and outside of his dwelling. (Doc. 29-2, ¶3; see also Doc. 1-6 at 2). The Court of Common Pleas ordered Newell to remove the junk and debris on his property and to vacate the property until he could obtain the necessary permits. (Doc. 29-2).

4

On January 22, 2013, Ross Township filed a petition for enforcement of the August 6, 2012 order. (Doc. 29-3).

On July 25, 2013, Newell's property was condemned and sold at a Sheriff's Sale. The township purchased the land, with an estimated market value of about $125,000.00, for $1,806.10 in order to satisfy a judgment of $8,434.15 against Newell. Ten days later, Newell attacked attendees at the August 5, 2013 Ross Township meeting, resulting in the deaths of Gerard Kozic, James LaGuardia and David Fleetwood.

The original complaint and the proposed amended complaint allege that the legal action pursued by the defendants (except for Sheriff Martin) was a "direct cause-in-fact and substantial factor" in bringing about the death of the plaintiff's decedent and severe bodily harm to the plaintiff. (Doc. 47-3, ¶53). The plaintiff also alleges that the defendants knew or should have known of Newell's mental instability and his predisposition for violence based on several incidents prior to the shooting. The factual allegations describe these incidents, many of which are sourced from news articles.

According to a July 4, 2002 Pocono Record article, the zoning officer at that time, John Kochis, was quoted as saying that he believed that Newell's property was boobie trapped. Code Enforcement Officer Kochis went to Newell's property to investigate whether Newell resided there. Before approaching Newell to question him, Kochis removed Newell's mail from his

mailbox. Newell became agitated and told Kochis to leave his property. In response, Kochis revealed to Newell that he was carrying a hand gun. Newell proceeded to remove an automatic weapon from his vehicle and spray bullets into the trees. Newell then advised Kochis that if Kochis ever returned to his property, Newell would assume that he was under attack and shoot Kochis. Allegedly, the prior Code Enforcement Officer quit on his first day of work after being tasked with delivering an enforcement notice to Newell and refusing, indicating that no one should "mess" with the Newells. (Doc. 47-3, ¶31).

With respect to Solicitor Dunn, well in advance of the date of the shooting, Newell approached Attorney Michael Kaspszyk ("Attorney Kaspszyk") "about representation in his battle with Ross Township over his land." (Doc. 47-3, ¶27). Attorney Kaspszyk discussed Newell's allegedly disturbing behavior and alarming comments to Solicitor Dunn, who dismissed the behavior as characteristic of Newell.

After a hearing in the Court of Common Pleas of Monroe County, Solicitor Dunn approached Newell outside the courthouse to compliment him on obtaining favorable results at the hearing. Newell then took a bullet from his coat pocket and showed it to Solicitor Dunn, stating that "if he had taken his property, Mr. Newell would have shot Mr. Dunn that night." (Doc. 47-3, ¶28).

Additionally, Newell purportedly threatened Supervisor Kresge with

physical violence on multiple occasions. On one of these occasions, at a local diner, Newell stated to Kresge, "You know me and you know my family. You keep this up, and we're going to meet somewhere, me and you. When we're done, it will be only me." (Doc. 47-3, ¶29).

With respect to Sheriff Martin, the pleadings state that Newell's father, Peter Newell, "warned sheriff deputies trying to serve sheriff sale notice documents that his son was threatening violence," specifically stating to them, "I'm telling you one thing, people are going to die over this." These quotes were taken from an Associated Press article written after the shooting on August 7, 2013. (Doc. 47-3, ¶32). Prior to the shooting, Newell also allegedly told Sheriff Martin that if Martin were to come to take his property, "Shoot me because I don't want to shoot you." (Doc. 47-3, ¶34).

The plaintiff avers that, despite this long history and knowledge of Newell's threats to kill over his land, the defendants failed to warn attendees of the August 5, 2013 township meeting and to provide security. These actions violated Gerard Kozic's and the plaintiff's "right to be free from harm" and "free from interference with the fundamental right to life, liberty and the pursuit of happiness." (Doc. 47-3, ¶¶49-50).


## II.   PROCEDURAL HISTORY

The plaintiff filed the original complaint on July 30, 2015 for violation of

the plaintiff's and the decedent's constitutional due process rights pursuant to §1983, with the first cause of action for wrongful death, the second cause of action for survivorship, and the third cause of action for the plaintiff's personal injury. The defendants filed motions to dismiss, respectively, which the plaintiff opposed. Sheriff Martin filed a motion to dismiss and a supporting brief on September 14, 2015. (Doc. 19, Doc. 20). The plaintiff filed an opposing brief on October 28, 2015 2015, with leave of court to file after the response deadline passed. (Doc. 26, Doc. 35). Sheriff Martin filed a reply brief on October 29, 2015. (Doc. 36).

Ross Township and the Ross Township Supervisors filed a motion to dismiss and a supporting brief on September 24, 2015. (Doc. 22, Doc. 23). The plaintiff filed an opposing brief on November 9, 2015, with leave of court to file after the response deadline passed. (Doc. 25, Doc. 37). Ross Township and the Ross Township Supervisors filed a reply brief on December 4, 2015, after the court reset the reply deadline for that date. (Doc. 43).

Solicitor Dunn filed a motion to dismiss and a supporting brief on October 16, 2015. (Doc. 29, Doc. 30). The plaintiff filed an opposing brief on November 30, 2015, with leave of court to file after the response deadline passed. (Doc. 34, Doc. 42). Solicitor Dunn filed a reply brief on December 14, 2015, after the court reset the reply deadline for that date. (Doc. 44).

In the midst of briefing on the motions to dismiss, on November 20,

2015, the court issued a scheduling order providing a deadline of February 1, 2016 for the filing of amended pleadings. (Doc. 40). On May 9, 2016, the Court extended the case management deadlines without altering the deadline for the amendment of pleadings. (Doc. 46). On May 13, 2016, the plaintiff filed a motion for leave to file an amended complaint along with the proposed amended complaint, (Doc. 47, Doc. 47-3), and a supporting brief on May 23, 2016, (Doc. 49).[1] Defendants Dunn and Martin filed an opposing brief on May 17, 2016, (Doc. 48), and Ross Township and the Ross Township Supervisors filed an opposing brief on May 31, 2016, (Doc. 51). Having received and reviewed briefs on both motions from all parties, the motions are now ripe for decision.

## III.   LEGAL STANDARDS

The plaintiff brought a motion for leave to file an amended complaint pursuant to Fed. R. Civ. P. 15(a)(2), since the time for amending the complaint as a matter of course had expired. See Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2) states: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave

---

[1]The plaintiff failed to provide a copy of the original pleading in which stricken material has been lined through and any new material has been inserted and underlined or set forth in bold-faced type, or a "redlined" version of the proposed amended complaint, as per Local Rule 15.1(b), but the court deems this as a non-fatal error.

when justice so requires." The Third Circuit has adopted a liberal approach to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486–87 (3d Cir. 1990). Amendment, however, is not automatic. See Dover Steel Co., Inc. v. Hartford Accident and Indent., 151 F.R.D. 570, 574 (E.D. Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).

Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990).

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be

granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 544. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 545) (brackets and quotation marks omitted).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached]

documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   DISCUSSION

### A.   Federal Claims

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.2006). Thus, to state a claim under §1983, the plaintiff must show that the defendant, acting under color of state law, deprived the decedent and her of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423. Here, the plaintiff complains of a violation of her and the decedent's substantive due

12

process rights under the Fourteenth Amendment.

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. In DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195-96 (1989), the Supreme Court held that the Fourteenth Amendment imposes no affirmative obligation upon a state to protect its citizens from private actors. Similar to this case, the DeShaney case involves very mournful circumstances. Joshua DeShaney suffered physical abuse from his father. The respondents, social workers and local officials, had ample reason to believe Joshua's father was physically abusing him and, at one point, secured temporary custody of Joshua. They returned Joshua to his father, however, and the violence continued. Ultimately, Joshua's father caused severe brain damage to him. Joshua and his mother sued respondents under §1983 claiming that their failure to act deprived Joshua of his liberty interest in "free[dom] from . . . unjustified intrusions on personal security," in violation of the Due Process Clause of the Fourteenth Amendment. Id. at 195. The Supreme Court held that it did not, stating that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Id. The Supreme Court affirmed a summary judgment for the respondents. Two exceptions to the DeShaney holding exist: the "special

relationship" exception and the "state-created danger" exception. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997).

In the instant case, the plaintiff seeks to amend the complaint by adding new factual allegations about Newell's threats to specific individuals. (See Doc. 47-3, ¶¶28-31, 34). Namely, the plaintiff seeks to add alleged facts about Newell's threat to Solicitor Dunn in which Newell displayed a bullet to him; Newell's threats of physical violence to Supervisor Kresge; the confrontation in which Newell discharged a weapon into the trees during zoning officer Kochis' investigation on Newell's property; and the quitting of the zoning officer prior to Kochis. All defendants oppose the proposed amendments on grounds of futility. The defendants argue that the court should reject the revisions because they cannot rehabilitate the plaintiff's complaint and save it from dismissal due to the Supreme Court precedent of DeShaney. The defendants also raise various other objections to the complaint in their petitions for dismissal, only some of which merit discussion below. In response, the plaintiff contends that the "state-created danger" exception applies.

A state is responsible for the protection of its citizens where its actions create or enhance the danger to a citizen from the state or a third party. Kaucher, 455 F.3d at 431 (citing Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996). To state a claim under this theory of state-created danger, the

14

plaintiff must establish four elements: "(1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." Kneipp, 95 F.3d at 1208.

### 1.    Creating the Opportunity for Harm

The court begins its analysis by examining the fourth element for a claim under the state-created danger theory, which is dispositive of one category of alleged infringement by the defendants. The plaintiff must sufficiently plead that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." Bright, 443 F.3d at 281. The defendant's action must be the "but-for" cause of the plaintiff's injury. Kaucher, 455 F.3d at 432 (citing Estate of Smith, v. Marasca, 318 F.3d 497, 510 (3d Cir. 2003)). Moreover, "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm. Only then will the affirmative act render the plaintiff 'more vulnerable to danger than had the state not acted at all.'" Kaucher, 455 F.3d at 432 (quoting Bright, 443 F.3d at 281).

In the pleadings, the plaintiff identifies two general categories of

unconstitutional conduct. First, the plaintiff cites a litany of alleged malfeasance by Ross Township, the Ross Township Supervisors, and Solicitor Dunn, revolving around the pursuit of legal action against Newell for violations of local zoning and sewer regulations, "infractions that were ignored against other owners." (Doc. 47-3, ¶16(b),(e)). The plaintiff also cites a litany of nonfeasance by all the defendants, including Sheriff Martin, based on their failure to warn attendees of the township meeting of the risk of violence by Newell, and to provide security at the meeting on August 5, 2013. (Doc. 47-3, ¶¶54(g)-(h), 61(d),(f)).

Regarding the latter kind of prohibited conduct - the defendants' omissions - it does not give rise to constitutional claims under DeShaney. As the Third Circuit emphasized in Bright, "under the fourth element of a state-created danger claim, '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger.'" Id., 443 F.3d at 282 (quoting D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992) (en banc)). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Bright, 443 F.3d at 282.

The plaintiff claims that the defendants are culpable for not providing security at the township meeting and for not warning attendees of the risk of harm. These allegations are devoid of affirmative acts. Further, under

16

DeShaney, the defendants' failure to protect the decedent and her from Newell's attack is not a due process violation. The Due Process Clause was intended to "protect the people from the State, not to ensure that the State protected them from each other." DeShaney, 489 U.S. at 196. The Framers of the Constitution relegated the extent of the State's duty to protect citizens from private violence to legislative processes. Id. The court holds that the plaintiff has failed to state a cause of action under the Fourteenth Amendment for the defendants' alleged omissions, including the failure to warn the meeting attendees of the risk of danger and the failure to provide security at the meeting.

Sheriff Martin's purported due process violations in the complaint consist only of omissions. The plaintiff argues that the "The Sheriff's decision *not to convey this warning* to Township officials constituted an affirmative use of his authority that placed the Plaintiffs in danger when they attended the next Ross Township Supervisors meeting." (Doc. 35 at 18) (emphasis added). In other words, the plaintiff complains that the Sheriff failed to warn the meeting attendees. This is not an affirmative act but an omission. Sheriff Martin's purported due process violations in the complaint consist only of omissions. Further, the plaintiff distinguishes between Sheriff Martin's omissions and his affirmative role in serving Newell with legal process to underscore this point. In her opposition to Sheriff Martin's motion to dismiss,

the plaintiff asserts that "Plaintiff is not alleging that Sheriff Martin is liable for having served Newell with legal process but rather for failing to communicate the warnings . . . ." (Doc. 35 at 18). Under the precedent of DeShaney, the constitutional claims against Sheriff Martin for infringement of the plaintiff's and the decedent's due process rights must fail for lack of affirmative conduct.

Regarding the former kind of prohibited conduct alleged by the plaintiff - the legal action against Newell - it does encapsulate affirmative acts. The issue is whether these acts created a danger to the decedent and to her. Here, the Ross Township Supervisors and Ross Township (through the actions of the Defendant Supervisors) pursued legal action against Newell for violating zoning and sewage regulations. Solicitor Dunn represented the township in the action. After the township secured a favorable outcome, the Monroe County Sheriff's Office, under the supervision of Sheriff Todd Martin, served the notice of Sheriff's sale on Newell and executed the sale. As mentioned, although the plaintiff does not explicitly recognize Sheriff Martin's role here as affirmative conduct attributable to him, viewing the facts in a light most favorable to the plaintiff, the court recognizes this affirmative conduct in the factual allegations. The plaintiff and the decedent were shot by Newell, resulting in serious injury to the plaintiff and the death of the decedent. The defendants' actions, individually or collectively, did not create this danger that led to Gerard Kozic's death and to Linda Goss-Kozic's physical injuries. To

conclude otherwise would require an insurmountable leap in logic. The plaintiff has failed to adequately plead the fourth element of the state-created danger theory of liability.

### 2.    Foreseeable and Fairly Direct Harm

With respect to the first element, the plaintiff must sufficiently allege that "the harm ultimately caused was foreseeable and fairly direct." Kneipp, 95 F.3d at 1208. Although the plaintiff pleads that the defendants were aware of a credible threat of violence by Newell, and that the defendants' actions caused Gerard Kozic's death, these allegations are not necessarily sufficient to state a viable claim. The court need not accept "bald assertions" or "legal conclusions" contained in the complaint. Morse, 132 F.3d at 906 (quotations omitted).

The plaintiff argues that the fact that Newell "missed his intended targets and shot others within the zone of danger" does not make the attack any less foreseeable. (Doc. 37 at 18). Even with consideration of the proposed factual additions to the original complaint, the foreseeability of the shooting is unclear. The plaintiff cites several incidents purportedly demonstrating Newell's violent propensities, the first dated incident being in 2002, almost ten years after Newell purchased the property. In 2002, Kochis made a statement to the Pocono Record that he believed the land to be

boobie trapped. Then, over ten years after that, and after the township initiated legal proceedings against Newell, Newell threatened violence against Solicitor Dunn and Sheriff Martin on separate occasions. Newell purportedly brandished a bullet before Solicitor Dunn. When Kochis went to Newell's property to conduct an investigation, Newell fired shots from his automatic weapon into the trees. The plaintiff also cites other incidents - many with unspecified dates - such as Newell's verbal threats to Supervisor Kresge.

Many of Newell's threatening incidents described in the original complaint, as well as the proposed amended complaint, are vague and lack specificity regarding timing and/or substance. For example, paragraph 27 states that the incident involving Attorney Kaspszyk occurred "well in advance of August 5, 2013," and it was then that Attorney Kaspszyk found Newell's behavior to be "disturbing" and his comments to be "alarming," without any detail about how Newell's behavior was disturbing or any quotes about his alarming comments. (Doc. 1, ¶27; Doc. 47-3, ¶27). Paragraph 29 describes that, after one incident at a local diner, "[o]n multiple other occasions, Mr. Newell also threatened Defendant Kresge with physical violence." Further, the plaintiff imputes knowledge of all of the incidents above to each of the defendants. Assuming that each of the defendants possessed this knowledge, the court is unable to conclude that Newell's attack was a "fairly direct" result of the defendants' actions.

20

The plaintiff likens this case to Phillips, in which a county dispatcher at a 911 call center illegally solicited information from his dispatcher coworkers after he was suspended to track down his ex-girlfriend and her current boyfriend to ultimately shoot and kill them. Indeed, as the Third Circuit held, the complaint in Phillips adequately alleged foreseeability. When they provided the unauthorized information, the dispatcher coworkers knew of the assailant's distraught state following his breakup with his ex-girlfriend, which put them on notice of the risk of harm to her and her current boyfriend. Phillips, 515 F.3d at 238-39. Unlike Phillips, however, the strong causal nexus between the defendants' actions and the ultimate harm does not exist here. The court accepts that the sale of his land served to outrage Newell. Nonetheless, the court cannot accept the plaintiff's conclusory statement that the defendants' actions directly led to Newell's homicidal attack on attendees at Ross Township's meeting on August 5, 2013. The connection between each of the defendant's actions (described in the preceding section) and the shooting is too attenuated. Newell's attack was not foreseeable, and thus the plaintiff has failed to adequately plead the first element of the state-created danger theory of liability.

### 3.    Deliberate Indifference to Plaintiff's Safety

The second element requires the plaintiff to sufficiently allege that the

defendants acted in willful disregard for or deliberate indifference to the safety of the plaintiff and the decedent. Morse, 132 F.3d at 910. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)); see County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Kaucher, 455 F.3d at 425. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (internal citation omitted); Kaucher, 455 F.3d at 425. In a substantive due process claim, official conduct is egregious only when it "shocks the conscience and violates the decencies of civilized conduct." Lewis, 523 U.S. at 846-47 (internal citation omitted); Kaucher, 455 F.3d at 425. There is no definitive standard for "shocks the conscience," and the determination of whether conduct shocks the conscience entails an analysis of the facts in a particular case. Kaucher, 455 F.3d at 425-26. In a case involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n.10; Kaucher, 455 F.3d at 426-27 & n.4. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Kaucher, 455 F.3d at 427 n.4.

Inherent to the concept of deliberate indifference is the awareness of a

real danger. As discussed above, Newell's actions are not a fairly direct result, or "obvious consequence," of the defendants' actions. The role that each defendant played in prosecuting and enforcing an action for zoning violations cannot lead a reasonable jury to conclude that the defendants' actions shocked the conscious or amounted to deliberate indifference.

The plaintiff argues that Ross Township's and the Ross Township Supervisor's actions involved corruption that would shock the conscience, since Supervisor Kresge coveted Newell's property. (Doc. 37 at 20)[2]. The plaintiff, however, does not allege that Supervisor Kresge purchased the property at the Sheriff's Sale. Without more, these improper motives do not shock the conscience. See Locust Valley Golf Club, Inc. v. Upper Saucon Twp., 391 F. App'x 195, 199-200 (3d Cir. 2010) (non-precedential opinion).

In Locust Valley, the Third Circuit was confronted with a Section 1983 suit filed by golf club owners against the township and the township's board of supervisors for interfering with their agreement to sell property to a developer. The appellant-owners argued that the appellees violated their substantive due process rights by voting against rezoning the property, thereby not allowing its development. Further, the owners claimed that the appellees wrongfully blocked the development because one of the

---

[2]All citations to page numbers of documents on the case docket refer to the Case Management/Electronic Case Files (CM/ECF) document page number.

supervisors previously sought to buy the property for himself, and hence engaged in self-dealing. The Third Circuit noted that the only evidence of self-dealing in the case was the supervisor's "earlier, unsuccessful attempts to purchase the golf course, supporting a reasonable inference that [the supervisor] may have acted out of spite or in the remote hope that he might one day purchase the property himself." Id. at 199. In upholding summary judgment in favor of the appellees, the Third Circuit stated, "Taking this allegation as true, we conclude that [the supervisor's] 'improper motives' were not so egregious as to shock the conscience." Id. Here, as in Locust Valley, the plaintiff alleges that a township supervisor unsuccessfully attempted to purchase the subject property more than once, and that, as a result, this supervisor spurred other supervisors to vote unfavorably on a zoning matter. Accepting this allegation as true, the court cannot conclude the Supervisor Kresge's improper motives were so egregious as to shock the conscience.

Moreover, the plaintiff does not argue that the township's accusations of Newell's infractions were unfounded. Notwithstanding Supervisor Kresge's supposed improper motives, the Court of Common Pleas of Monroe County found the township's claims to be credible and ultimately sanctioned the defendants' actions. The court finds that the conduct of each of the defendants, as alleged by the plaintiff, does not exhibit deliberate indifference or establish the "requisite degree of culpability" to sustain a claim for a

constitutional violation. Phillips, 515 F.3d at 240. The plaintiff has failed to satisfy the second element of the state-created danger theory of liability.

### 4.    Relationship between the State and the Victims

The third element requires a plaintiff to adequately plead that the plaintiff had a relationship with the state "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." Kaucher, 455 F.3d 431. In her oppositions to the respective motions to dismiss filed by Ross Township, the Ross Township Supervisors, and Solicitor Dunn, the plaintiff argues that the decedent and she were foreseeable victims, relying on Reed v. Gardner, 986 F.2d 1122 (7th Cir. 1993) and Van Orden v. Borough of Woodstown, 5 F.Supp.3d 676 (D.N.J. 2014). (Doc. 37 at 21-22; Doc. 42 at 23-24).

In Reed, several motorists and passengers died and suffered serious injuries after a drunk driver collided with their cars. The drunk driver had been a passenger in a car that was pulled over by police officers. The police officers arrested the sober driver while leaving behind the obviously drunk passenger who subsequently took the wheel. In Van Orden, a motorist drowned after officials opened floodgates to a dam in anticipation of the arrival of a hurricane without closing the affected road. In each case, the

respective courts found the victims to be members of a discrete class of persons subjected to the foreseeable harm created by the defendants' actions. The ensuing accidents flowed directly from the actions of the defendants in those cases. In contrast, here the defendants' actions did not directly cause a harm transforming the August 5, 2013 township meeting attendees into a discrete class of persons.

The plaintiff references Peter Newell's warning to police officers that "people" are going to die over the dispute in support. This generalized statement does not hint to specific persons or even a discrete class of persons but rather the general public. Each of Newell's other threats, as described in the complaint, were individualized threats. The plaintiff has not succeeded in establishing the requisite relationship between the defendants and her, as well as the defendants and the decedent, and thus has failed to establish the third element.

In sum, neither the original complaint nor the proposed amended complaint includes factual allegations sufficient to state a due process claim because the plaintiff has failed to satisfy all four elements of the state-created danger theory of liability. The August 5, 2013 shooting was not a foreseeable result of the defendants' alleged action or inaction. It was Rockne Newell, and not the defendants, who caused Gerard Kozic's death and Linda Goss-Kozic's disabling injuries.

### B.    State Law Claims

Having determined that the original complaint and the proposed amended complaint fail to state a federal claim upon which relief can be granted, what remains are state law claims for wrongful death and survivorship over which this court has the discretion to exercise supplemental jurisdiction. District courts may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. §1367(c)(3). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997) (quoting Carnegie–Mellon Univ. v. Cahill, 484 U.S. 343, 350 (1988)). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, the court decides to exercise supplemental jurisdiction over the state law claims, which may be resolved by analyzing the defendants'

entitlement to immunity. In <u>Bright</u>, after upholding the district court's decision dismissing the plaintiff's claim for a due process violation under <u>DeShaney</u>, the Third Circuit upheld the district court's exercise of jurisdiction over state law claims for wrongful death and survivorship. <u>Id., 443 F.3d at 282</u>. While acknowledging its earlier holding in <u>West Mifflin</u>, the Third Circuit stated, 'any further delay in ruling on that entitlement would undermine an important objective of the state in recognizing such immunity . . . ." <u>Id. at 286</u>. Ruling on these claims also furthers judicial economy.

In their motions to dismiss, Ross Township, the Ross Township Supervisors, and Sheriff Martin argue that they are entitled to immunity on the plaintiffs' state law claims pursuant to the Political Subdivision Tort Claims Act, ("PSTCA"), <u>42 Pa.C.S.A. §§ 8541</u> et seq. (Doc. <u>23</u>-3 at 19). Section 8541 of the PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." The plaintiff does not dispute the applicability of the PSTCA to these defendants. In fact, with respect to Ross Township and the Ross Township Supervisors, the plaintiff states, "Inasmuch as Plaintiff did not aver any claims under Pennsylvania law, Plaintiff does not oppose the dismissal without prejudice of all state law claims." (Doc. <u>37</u> at 25). The plaintiff's concession alone is sufficient to end the inquiry on the state law claims against Ross Township and the Ross

Township Supervisors. The court will nonetheless assess the applicability of immunity to these defendants.

The PSTCA enumerates a list of exceptions for liability for negligence in certain circumstances. See 42 Pa.C.S.A. §8542. The plaintiff does not appear to maintain a cause of action for negligence against the defendants, and the plaintiff's claim also does not fall into one of the eight enumerated exceptions. An additional exception under the PSTCA exists for public employees whose actions have been deemed a "crime, actual fraud, actual malice or willful misconduct" by judicial determination. 42 Pa.C.S.A. §8550. Under Pennsylvania law, "willful misconduct" has been defined to mean "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." King v. Breach, 540 A.2d 976, 981 (Pa. Cmwlth. 1988) (citing Evans v. Philadelphia Transportation Co., 212 A.2d 440 (Pa. 1965)). Thus, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" King, 540 A.2d at 981.

In this case, the plaintiff does not allege that the defendants intended for the harm to befall attendees of the August 5, 2013 Ross Township meeting. Nor were they aware that this harm was substantially certain to follow, as elaborated above. Newell's attack was not a foreseeable result of their actions. The court finds that the PSTCA statute bars state law claims for

wrongful death and survivorship against Ross Township, the Ross Township Supervisors, and Sheriff Martin.

The court further finds that the plaintiffs' state law claims for wrongful death and survivorship cannot go forward against all of the defendants, including Solicitor Dunn, because the plaintiff has failed to sufficiently plead the requisite elements of these claims. Solicitor Dunn did not move to dismiss the plaintiff's state law claims. The court may nonetheless dismiss the plaintiff's complaint sua sponte. "Generally, a district court may sua sponte dismiss a complaint under Rule 12(b)(6) after service of process only if the plaintiff is afforded an opportunity to respond. See Oatess v. Sobolevitch, 914 F.2d 428, 430 n. 5 (3d Cir.1990). Although disfavored, a sua sponte dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile." Bethea v. Nation of Islam, 248 F. App'x 331, 333 (3d Cir. 2007) (non-precedential opinion). Because the court finds that amendment would be futile, the court finds a sua sponte dismissal to be appropriate despite the plaintiff not having notice or an opportunity to respond. An exercise of jurisdiction over state law claim against Solicitor Dunn's also furthers judicial economy.

Pennsylvania's wrongful death statute provides that an action may be brought for "the death of an individual caused by the wrongful act or neglect

or unlawful violence or negligence," if no action for damages was brought by the injured person during his lifetime. [42 Pa. Con. Stat. Ann. §8301(a)](). "This right of action exists for the benefit of the spouse, children, or parents of the deceased," [Faison v. United States, 547 F. App'x 88, 90 (3d Cir. 2013)]() (non-precedential opinion), and is intended to compensate the decedent's survivors for their loss due to the decedent's death, such as the decedent's earnings and companionship, [Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 271 (3d Cir. 2006)](). See also [42 Pa. Con. Stat. Ann. §8301(b)](). Pennsylvania's survival statute allows all causes of action to survive the death of a plaintiff and is brought by the administrator of the decedent's estate. [42 Pa. C.S.A. §8302](). A survivorship action is for the benefit of the decedent's estate. "The Wrongful Death and Survival Act did not create a new theory of liability but merely allowed a tort claim of the decedent to be prosecuted. As a result, a plaintiff must state all the elements of a valid tort in order to maintain a claim under those statutes and such theory is subject to defenses." [Ferencz v. Medlock, 905 F.Supp.2d 656, 674 n.10 (W.D.Pa.2012)]() (citations omitted).

Under Pennsylvania common law, the elements of a negligence action are a duty recognized by the law, requiring the actor to conform to a certain standard of conduct; a breach, or failure to conform to the standard required; a causal connection between the conduct and the resulting injury; and actual loss or damages. [Matthews v. Konieczny, 527 A.2d 508, 511-12 (Pa. 1987)]()

31

(quotation omitted). In this case, the plaintiff states that the defendants' actions evidenced a "negligent" disregard for the safety of the meeting attendees. Additionally, the plaintiff alleges that the legal proceedings were a "substantial factor" in bringing about Gerard Kozic's death and her severe injuries. Liability cannot be founded on such conclusory statements. The plaintiff neglects to plead that the defendants had a duty to either the decedent or her. And, as elaborated above, the defendants' actions in prosecuting and enforcing legal proceedings against Newell are too remote in the causal chain of events to impose liability. The plaintiff has also not succeeded in adequately alleging any other wrongful acts by the defendants that resulted in the decedent's death and the plaintiff's physical afflictions. The factual pleadings are not sufficient to bring the state law claims for wrongful death, survivorship, and personal injury before a jury.

Finally, in her oppositions to the motions to dismiss by Solicitor Dunn and Sheriff Martin, respectively, the plaintiff maintains that she should have the right to assert a wrongful death action against Solicitor Dunn and Sheriff Martin under §1983. (Doc. 42 at 26; Doc. 35 at 20). Solicitor Dunn and Sheriff Martin retort that no binding authority mandates a wrongful death action to proceed in a Section 1983 case. The plaintiff admits that the Supreme Court and the Third Circuit have yet to rule on this issue. No party addresses this issue with respect to Ross Township and the Ross Township Supervisors.

The court need not decide whether a claim for wrongful death is a cognizable cause of action under §1983 because even if it were, the plaintiff's complaint does not meet the standard for an adequate pleading of a wrongful act by any of the defendants causing the death of the decedent. Under §1983, the alleged wrongful conduct must amount to constitutional violations, and must be the cause of the decedent's death and of the plaintiff's personal injuries. As analyzed above, the plaintiff's federal claims fail because the plaintiff does not sufficiently plead constitutional violations. Nor does the plaintiff sufficiently plead a tort claim or other wrongful act causing harm to the decedent and her.

## V.    CONCLUSION

For the foregoing reasons, the plaintiff's motion to amend the complaint is denied for futility, and the defendants' motions to dismiss the complaint are granted. The plaintiff's original complaint is dismissed with prejudice. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: August 29, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1479-01.wpd